HENRY DOREMUS et al.

*v.*

THE MAYOR AND ALDERMEN OF PATERSON.

[Decided June 20th, 1911.]

1. A decree restraining a city, its officers, agents and employes from continuing to pollute the waters of a river from and after a given date, reserving leave to apply to the court for further time, if, notwithstanding the exercise of due diligence, the mayor and aldermen of the city should be unable to cease polluting the river by said date, unappealed from, is binding, as the law of the case, and if the city desires more time, it must, according to the terms of the decree, show that it has exercised due diligence.

2. On a petition by the city praying that the injunction restraining the city after a given date from polluting a river should be stayed, and not be issued until a future named date, averring that it had exercised due diligence and stating the particulars thereof—*Held*, that the acts relied on did not constitute due diligence.

3. As the city appeared to have misapprehended the scope of the decree the case should be set down for further hearing, at which the city officials would have an opportunity of showing what it and they have done towards a solution of the problem, and what it is proposed to do. The court will then be in a position to say whether any or what further time shall be granted.

_____

*Mr. Edward F. Merrey,* for Paterson.

*Mr. Richard V. Lindabury.* for the complainants.

STEVENS, V. C.

This is a petition by Paterson praying that the injunction restraining the city after March 26th, 1911, from polluting the Passaic river should be stayed and not issued until March 26th, 1916.

In its amended answer to the bill filed by the property owners, Paterson admitted that it was discharging its sewage into the

river and elected rather than submit to an injunction to make such compensation to the complainants for the diminution in value of their lands and property rights as should be ascertained by this court to be just. It expressly stated that such injury or taking was to be temporary and "was to continue no longer than five years from the date of the filing thereof" (March 26th, 1906).

The court assessed the damages on this basis and then made a decree that the city, its officers, agents and employes should be restrained from continuing to pollute the waters of the Passaic from and after the 26th day of March, 1911.

The decree, made on June 26th, 1908, provided that if notwithstanding the exercise of due diligence the mayor and aldermen of the city of Paterson should be unable to cease polluting the river by the time aforesaid, leave was reserved to apply to this court.

This decree, unappealed from, is binding as the law of the case. If Paterson desires more time it must, according to its terms, show that it has exercised due diligence. In its petition now filed Paterson avers that it has exercised due diligence. It says that it has made exhaustive inquiry, and has ascertained that its sewage can be best and most cheaply disposed of by means of the contemplated trunk sewer. It further says that its inquiry has been followed up by action—that it has signed a draft of a contract prepared by the Passaic Valley Sewerage Commissioners. It has, however, done so with the following important reservation:

"Be it further provided that the actual work contemplated in this contract shall not be commenced nor shall the commission become obligated to any contractor for any part of said work until such time as the commission shall have received actual *bona fide* offers from a reputable and responsible contractor or contractors to complete said work within the sum of twelve million two hundred and fifty thousand dollars, including the costs of rights of way and other necessary property and equipment."

This modification has not been accepted by the commission, and is not, as was stated on the argument, agreeable to it.

The resolution containing this proviso was passed on January 13th, 1911, and the executed draft containing the reservation in

question was delivered to the commission in the same month. As far as the papers disclose, Paterson has done nothing since.

In its petition, Paterson makes the following statement:

"This defendant further shows that its officers realize the nuisance created and damage done by its present method of sewage disposal not only to the complainants but to many of its own citizens and that they are anxious to remedy this condition as promptly as possible."

From this it is clear that the city and the complainants are in accord both as to the character of the nuisance, which is constantly increasing, and as to the desirability of its speedy abatement. The city, in its petition, admits that the trunk sewer plan is the cheapest and most feasible. Such being the situation, it is no longer a question whether it is or is not advisable to abate the nuisance or even, as it would seem, a question of the best method of abatement. It is rather one of the practical execution of the work. It is manifest that in the exercise of the due diligence demanded by the decree, the city must not only give its assent to a plan in the abstract, but must take some action—action that will be effective. It must either abandon the modification, if not accepted, and come to some understanding with the commission, or, if it deems that inexpedient, it must proceed with an alternative method of sewage disposal. It cannot, after having proposed an unacceptable proviso, stand still and do nothing further. That is not due diligence.

As the city appears to have misapprehended the scope of the decree, I think the case should be set down for further hearing. The city officials will have an opportunity of showing what it and they have done towards a solution of the problem, and what it is proposed to do. The court will then be in a position to say whether any or what further time shall be granted.

I think further testimony can best be taken in open court where counsel will have an opportunity for cross-examination, and where either of the parties will be at liberty to subpœna the members of the sewerage commission. It will be remembered that according to the terms of the decree, not only the corporation but its officers, agents and employes are restrained from continuing to pollute the water. It is to the case thus situated that the evidence will be directed.